**Leslie v Linde Inc.**

2025 NY Slip Op 32249(U)

June 23, 2025

Supreme Cour, New York County

Docket Number: Index No. 151725/2021

Judge: Lynn R. Kotler

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:   **HON. LYNN R. KOTLER**

                     *Justice*

PART             08

------------------------------------------------------------------X

WILLIAM LESLIE, JR.,

                    Plaintiff,

          - v -

LINDE INC., MESSER LLC, NORTH SHORE UNIVERSITY
HOSPITAL, NORTHWELL HEALTH, INC.,

                  Defendants.

------------------------------------------------------------------X

| INDEX NO. | 151725/2021 |
|---|---|
| MOTION DATE | 02/18/2025 |
| MOTION SEQ. NO. | 002 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105

were read on this motion to/for           JUDGMENT - SUMMARY       .

## INTRODUCTION

In this slip and fall action, defendants Linde Inc. and Messer LLC (collectively, "Linde") move pursuant to CPLR 3212 for summary judgment dismissing the complaint and all cross-claims against them or, in the alternative, granting them summary judgment on their cross-claim for common-law indemnification against co-defendants North Shore University Hospital and Northwell Health, Inc (collectively, "Northwell"). Plaintiff and Northwell oppose the motion. For the reasons that follow, the motion is granted in part.

## BACKGROUND

Northwell purchased liquid oxygen from Linde for use in its hospital pursuant to a 2001 contract, as subsequently amended, originally entered into by their predecessors. The liquid oxygen was stored at an outdoor oxygen station on the hospital grounds, which was originally constructed in 1989. The contract contained an indemnification provision, which stated that:

> Contractor shall: (1) indemnify Purchaser and its employees (together the "Purchaser Indemnitees") for any payment that the Purchaser Indemnitees are required to make to a third party, and (2) defend the Purchaser Indemnitees, but only to the extent that the third party claim results from Contractor's negligence or other tortious acts in connection with the products sold, or the services rendered,

**151725/2021  LESLIE, JR., WILLIAM vs. LINDE INC.**
Motion No. 002

Page 1 of 9

1 of 9

by Contractor. To be clear, this undertaking may not be construed to require Contractor to indemnify the Purchaser Indemnitees for any loss, or defend any claim, because of damages, arising out of or caused by the Purchaser Indemnitees' (1) negligence, gross negligence, or other tortious conduct; (2) breach of contract; or (3) violation of law.

The oxygen station was fenced off but had two gates, each of which had dual locks, allowing for the gate to be opened using a key provided by either Linde or Northwell. Northwell owned the property on which the oxygen station was located and was responsible, as relevant here, for the daily inspection of the station, lighting the station, and removing any snow or ice on the ground of the station. Linde owned and was responsible for the installation, maintenance and repair of the station's oxygen storage equipment.

Conditions within the station were noted in a logbook kept by Northwell staff in connection with their daily inspections. If there was snow or ice on the ground within the site, Northwell staff would shovel the snow or lay down salt to melt the ice. Northwell staff were trained to look out for indications that the oxygen storage equipment was not functioning properly, such as leaks or signs of broken insulation, and to report such issues to Linde. This included looking out for and flagging any excessive ice formation on the equipment—some light condensation and/or frosting on the equipment was normal—as well as any non-weather-related freezing of ground condensation in the vicinity of the equipment. Linde conducted annual preventive maintenance inspections of the station and performed corrective maintenance as needed in response to issues reported by Northwell or third-party drivers making deliveries to the station.

Beginning in 2013, Linde's annual inspections and corrective maintenance of the station's oxygen storage equipment was performed by Jeremy Ogle, a field service technician for Linde. Ogle testified regarding the operation of the four vaporizers installed within the oxygen station, which were used to convert liquid oxygen into a gas. Normal operation of the vaporizers would cool the air within a few inches of them, resulting in some light icing on the exterior of the equipment. To prevent excessive ice formation, the vaporizers would be run one at a time. When a vaporizer was shut off, the ice formed on its exterior surface during operation would melt onto the ground, where it might then freeze, depending on the ambient air temperature. The vaporizers were installed in a row running parallel to the station's fence and were separated from the fence

151725/2021 LESLIE, JR., WILLIAM vs. LINDE INC. Page 2 of 9
Motion No. 002

2 of 9

[* 2]

by a three-foot-wide corridor. Ogle testified that, in his experience, it was "highly unlikely" that the normal operation of the vaporizers, by itself, would cause any ground condensation in this corridor to freeze. He explained that, while the vaporizers would cool the air in the few inches immediately surrounding them, they were also designed to direct the flow of this cooled air away from the subject corridor and toward the main oxygen storage tank, located on the opposite side of the vaporizers.

Ogle conducted an annual inspection of the oxygen station in November 2018, three months prior to plaintiff's accident, and noted no issues with the station's lighting or the operation of Linde's equipment. He further testified that Linde received no reports at any time prior to plaintiff's accident of any problems with the oxygen station's lighting or the operation of the locks on the station's gates, nor did it receive any reports of excessive ice formation on the oxygen storage equipment or of the equipment causing any non-weather-related freezing of ground condensation within the station. Northwell staff conducted a daily inspection of the oxygen station at approximately 2:30 pm on the day of plaintiff's accident and likewise noted no issues with the station's lights or the locks on its gates, no excessive ice formation on the oxygen storage equipment, and no snow or ice conditions on the ground within the station.

Plaintiff was injured while transporting liquid oxygen to Northwell on February 24, 2018, at approximately 10:45 pm, when he slipped and fell on an icy condition in the corridor running between the vaporizers and the oxygen station's fence. At the time of his accident, plaintiff was employed as a driver by non-party Kenan Advantage Group ("Kenan"), which was a carrier for Linde. Plaintiff testified that it was raining while he drove to the hospital, and that, while the rain had stopped by the time he arrived and parked his truck outside the oxygen station, the ground surrounding the station remained wet. Plaintiff further testified that he did not notice whether or not there was any snow, ice, or slush in the parking area outside the station.

Plaintiff tried to enter the oxygen station through the right gate, but the key provided by Linde, via Kenan, did not work, so he entered through the left gate instead. Plaintiff attached the hose from his truck to the fill line for the oxygen tank, located adjacent to the left gate, and then walked down the corridor between the vaporizers and the fence toward the gauges for the oxygen tank located at the other end of the station. As plaintiff walked down the corridor, he slipped and

[* 3]

fell. Plaintiff testified that the interior of the oxygen station lacked lighting, and he thus was unable to observe any icy condition in the corridor prior to his fall. However, plaintiff testified that, after he fell, he observed ice on the ground that appeared to run the length of the corridor next to the vaporizers.

Plaintiff commenced this action in February 2021, asserting a single negligence cause of action against all defendants. In their answers, Northwell and Linde each asserted cross-claims against the other for contribution and common-law and contractual indemnification. Plaintiff's bill of particulars, dated May 7, 2021, alleged that plaintiff's injury was caused by "a dangerous icy and/or otherwise slippery condition on the ground" within the oxygen station and that the defendants were negligent in various ways, including an allegation, unaccompanied by any further detail or explanation, that defendants "negligently design[ed] said station[.]" Plaintiff was deposed in July and October 2022, Ogle in November 2022, and a pair of witnesses for Northwell in January and December 2023. The note of issue was filed in March 2024, and the present motion then ensued.

## DISCUSSION

"The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case" (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]; *see also Pullman v Silverman*, 28 NY3d 1060, 1062 [2016]). Without a *prima facie* showing, the motion must be denied regardless of the sufficiency of the opposing papers (*Vega v Restani Constr. Corp.*, 18 NY3d 499, 503 [2012], citing *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). The moving party has a heavy burden as the facts must be viewed in a light most favorable to the non-moving party (*William J. Jenack Estate Appraisers and Auctioneers, Inc. v Rabizadeh*, 22 NY3d 470, 475 [2013]; *see also Bazdaric v Almah Partners LLC*, 41 NY3d 310, 316 [2024]). If the moving party meets its *prima facie* burden, the burden shifts to the party opposing the motion to produce evidentiary proof in admissible form sufficient to raise a triable issue of fact (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]; *see also Stonehill Capital Mgt., LLC v Bank of the W.*, 28 NY3d 439, 448 [2016]). Mere conclusions, expressions of hope, or unsubstantiated allegations are insufficient to defeat a summary judgment motion (*Justinian Capital SPC v WestLB AG, N.Y. Branch*, 28 NY3d 160, 168 [2016]).

151725/2021  LESLIE, JR., WILLIAM vs. LINDE INC.
Motion No.  002

Page 4 of 9

An essential element for a claim of negligence is a breach of duty (*Anderson v Commack Fire Dist.*, 39 NY3d 495, 502 [2023]). Absent a duty running from the defendant to the plaintiff, there can be no breach and thus no liability (*DiBrino v Rockefeller Ctr. N., Inc.*, 230 AD3d 127, 132 [1st Dept. 2024]). As such, a non-party to a contract cannot generally impose tort liability on a contracting party for a breach of the contract (*Aiello v Burns Intl. Sec. Servs. Corp.*, 110 AD3d 234, 246 [1st Dept .2013]; *see Megaro v Pfizer, Inc.*, 116 AD3d 427, 427 [1st Dept. 2014] ["A contractual obligation does not generally 'give rise to tort liability in favor of a third party'"], quoting *Espinal v Melville Snow Contrs.*, 98 NY2d 136, 138 [2002]). A contractor is potentially liable in tort to third persons, however, where it "'launches a force or instrument of harm,' where the plaintiff suffers injury as a result of reasonable reliance on the [contractor's] continued performance of a contractual obligation, or 'where the contract[or] has entirely displaced the other [contracting] party's duty to maintain the premises safely'" (*Megaro*, 116 AD3d at 427, quoting *Espinal*, 98 NY2d at 140; *see also DiBrino*, 230 AD3d at 133).

Linde submits its contract with Northwell, which establishes, *prima facie*, that it was retained by Northwell under contract to install, maintain and repair the oxygen storage equipment in the subject oxygen station, and therefore did not owe a duty to noncontracting third parties such as plaintiff (*see Welliver v T-C The Colorado LLC*, -- NYS3d --, 2025 WL 1437895, at *1 [1st Dept. May 20, 2025], citing *Espinal*, 98 NY2d at 140; *Giovacco v Graham*, 213 AD3d 523, 524 [1st Dept. 2023]).

Moreover, Linde's submission of the contract and the deposition testimony of plaintiff and the defendants' various witnesses establishes, *prima facie*, that it did not create or have notice of the icy condition that caused plaintiff's injury, nor did it displace Northwell with respect to the duty to maintain the premises safely. The defendants' witnesses uniformly testified that Northwell was responsible for the daily inspection and lighting of the oxygen station, as well as any necessary snow or ice removal. While it is undisputed that the normal operation of Linde's vaporizers could cause the ground around the equipment to become wet, that is not a basis to impose liability upon Linde under the circumstances of this case, given plaintiff's own testimony that, on the night of his accident, the ground was wet due to rain even in areas not adjacent to the vaporizers. Further, Ogle testified that, based on his five years of experience with the subject oxygen station and his knowledge regarding the operation of the specific equipment

151725/2021 LESLIE, JR., WILLIAM vs. LINDE INC.
Motion No. 002

Page 5 of 9

installed therein, it was "highly unlikely" that Linde's equipment could independently cause ground water to freeze in the corridor where plaintiff slipped and fell. Indeed, Ogle testified that Linde had no notice at any time prior to plaintiff's accident of excessive ice formation on the oxygen storage equipment or of the equipment causing any non-weather-related freezing of ground condensation within the station.

Plaintiff's sole contention in opposition is that Linde negligently designed the oxygen station, that it thereby launched the instrument of harm that resulted in plaintiff's injury, and that plaintiff relied upon Linde to design the station safely. Specifically, plaintiff contends that Linde was negligent in failing to locate the fill line adjacent to the gauges for the oxygen tank, thereby causing him to have to walk down the corridor alongside the vaporizers to get from the fill line to the gauges. Plaintiff further contends that Linde was negligent in failing to provide slip resistant metal grating and/or a handrail in the subject corridor despite the known risk that vaporizers may, in the normal course of their operation, shed water onto the ground that may in turn cause or contribute to a slipping hazard. In support of this negligent design theory, plaintiff submits the affirmation of Robert Legler, an expert in the industrial gas supply and storage business, dated December 13, 2024, in which Legler avers that Linde negligently designed the subject station because it: (1) separated the fill line from the gauges for the oxygen tank, purportedly in violation of specific provisions of the guidelines of the National Fire Protection Association ("NFPA"); and (2) failed to install slip resistant metal grating and/or a handrail in the corridor next to the vaporizers, purportedly in violation of industry standards. Plaintiff further submits his own affirmation, dated December 20, 2024, in which he states that he "trusted" and "assumed" the subject oxygen station would be safely designed in the same manner as other unidentified Linde stations to which he had previously made deliveries, and which, according to plaintiff, typically co-located the fill line and oxygen tank gauge and provided slip resistant metal grating and a handrail in any walkways located nearby the vaporizers. These submissions, however, are insufficient to raise a triable issue of fact.

"It is axiomatic that a plaintiff cannot defeat a summary judgment motion that made out a prima facie case by merely asserting, without more, a new theory of liability for the first time in the opposition papers" (*Biondi v Behrman*, 149 AD3d 562, 563–64 [1st Dept. 2017]; *see Valette v Correa*, 216 AD3d 500, 500–01 [1st Dept. 2023]; *Keenan v Christie's Inc.*, 189 AD3d 622, 623

[1st Dept. 2020]; *Mitchell v 423 W. 55th St.*, 187 AD3d 661, 662 [1st Dept. 2020]; *Minor v E. Harlem Tutorial Program, Inc.*, 187 AD3d 408, 408 [1st Dept. 2020]; *Marti v Rana*, 173 AD3d 576, 577 [1st Dept. 2019]; *Araujo v Brooklyn Martial Arts Acad.*, 304 AD2d 779, 780 [2nd Dept. 2003]). Indeed, a theory of liability asserted in opposition to summary judgment that "ha[s] not been sufficiently pleaded" or otherwise raised in discovery such as to "avoid surprise and prejudice to defendants" is improper and may not be considered by the court (*Valette*, 216 AD3d at 501; *see Mitchell*, 187 AD3d at 662; *Biondi*, 149 AD3d at 564-65). Here, while plaintiff's bill of particulars includes a conclusory allegation that defendants (though not Linde specifically) "negligently design[ed]" the subject oxygen station, neither the complaint nor the bill of particulars set forth factual allegations specifying the manner of any purported negligent design, nor did plaintiff provide any notice to Linde in discovery regarding the nature of his negligent design theory.

There is no mention in either the complaint or bill of particulars of any need to design oxygen stations so as to co-locate the fill line and oxygen tank gauges or to provide a metal grating and/or handrails in areas adjacent to the vaporizers, nor is any defective condition alleged except "a dangerous and/or otherwise slippery condition on the ground." There is likewise no reference in the pleadings to the violation of any applicable code provisions, industry standards, or regulations, much less the specific sections of the NFPA upon which Legler relies in his affirmation.[1] Indeed, plaintiff affirmatively declined to set forth in his bill of particulars any statutes, regulations, rules, or ordinances that Linde may have violated and instead reserved his right to supplement his response in this regard upon the conclusion of discovery, though no supplemental response was ever served. The complaint and bill of particulars are thus devoid of factual allegations that would have put Linde on notice of the negligent design theory now asserted by plaintiff for the first time in opposition to summary judgment (*see Valette*, 216 AD3d at 500; *Mitchell*, 187 AD3d at 662; *Bacalan v St. Vincents Cath. Med. Centers of New York*, 179 AD3d 989, 992–93 [2nd Dept. 2020]).

---

[1] In any event, Legler makes clear in his affirmation that the specific NFPA sections he cites are unrelated to slip and fall hazards and are instead meant to ensure the proper monitoring of internal pressure and fill levels of oxygen tanks during delivery. Moreover, neither Legler's affirmation nor any of plaintiff's other submissions establish that the NFPA sections cited by Legler were in effect at the time the subject oxygen station was designed.

Similarly, plaintiff did not put Linde on notice of his negligent design theory during discovery (*see Valette*, 216 AD3d at 500; *Mitchell*, 187 AD3d at 662). In stark contrast to his affirmation in opposition to the present motion, plaintiff offered no testimony at his deposition regarding the purportedly typical manner in which Linde designed its oxygen stations or any reliance on his part on a known aspect of Linde's purportedly typical station design. Indeed, plaintiff did not testify at all regarding the alleged need to co-locate the fill line and oxygen tank gauges within an oxygen station or to provide metal grating or handrails in areas adjacent to the vaporizers. Plaintiff's counsel likewise did not question Ogle regarding plaintiff's negligent design theory. Indeed, plaintiff's counsel did not question Ogle at all regarding any aspect of the oxygen station's design other than to ask him about NFPA standards related to the width of walkways, and to ask that Ogle identify the department at Linde responsible for the design of its systems. Ogle testified that the corridor where plaintiff fell complied with applicable NFPA space requirements, and that Linde had a separate department for the design of its systems, called CES Standards and Engineering. However, Linde's counsel affirms that plaintiff did not, following Ogle's testimony, seek the opportunity to depose a witness from the CES department, nor did plaintiff demand, either before Ogle's deposition or thereafter, any document discovery related to Linde's design of the oxygen station.

Because Linde was not put on notice of plaintiff's negligent design theory by either the pleadings or plaintiff's conduct in discovery, the court cannot now consider this new liability theory when raised for the first time in opposition to summary judgment and, as such, "[plaintiff's] opposition to summary judgment, which undisputedly turn[s] on this new theory, fail[s] to properly raise an issue of fact" (*Valette*, 216 AD3d at 501; *see Mitchell*, 187 AD3d at 662; *Biondi*, 149 AD3d at 564-65; *Keilany B. v City of New York*, 122 AD3d 424, 425 [1st Dept. 2014]). Therefore, Linde's motion is granted to the extent it seeks summary judgment dismissing plaintiff's sole cause of action for negligence.

Because Linde establishes, *prima facie*, that it was not negligent, and Northwell simply reiterates plaintiff's unavailing contentions in opposition, the motion is likewise granted to the extent it seeks summary judgment dismissing Northwell's cross-claims for contribution and common-law indemnification (*see Glaser v M. Fortunoff of Westbury Corp.*, 71 NY2d 643, 646–47 [1988]; *Herrero v 2146 Nostrand Ave. Assocs., LLC*, 193 AD3d 421, 423 [1st Dept. 2021]).

With respect to Northwell's cross-claim for contractual indemnification, the contract between Linde and Northwell expressly makes Linde's contractual indemnity obligation subject to a negligence trigger, providing for contractual indemnification "only to the extent that [a] third party claim results from Contractor's negligence or other tortious acts in connection with the products sold, or the services rendered, by Contractor." As such, and for the same reasons already discussed above, Linde's motion is also granted to the extent it seeks summary judgment dismissing Northwell's cross-claim for contractual indemnification.

In light of the foregoing, the court denies as moot the branch of Linde's motion that seeks summary judgment in Linde's favor on its common-law indemnification cross-claim against Northwell, as this relief is sought strictly in the alternative, and only in the event that the court should fail to grant the principal relief sought by the motion.

Any contentions by plaintiff or Northwell in opposition to Linde's motion not expressly addressed herein have nonetheless been considered and are hereby expressly rejected.

## CONCLUSION

Accordingly, it is

ORDERED that the motion of defendants Linde Inc. and Messer LLC is granted to the extent it seeks summary judgment dismissing the complaint and all cross-claims against these defendants, and the motion is otherwise denied; and it is further

ORDERED that the Clerk shall mark the file accordingly.

This constitutes the Decision and Order of the court.

6/23/2025
_____
DATE

HON. LYNN R. KOTLER

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

151725/2021  LESLIE, JR., WILLIAM vs. LINDE INC.                                Page 9 of 9
Motion No. 002